Therese Murphy, as Administratrix, etc., of Patrick Murphy, Deceased, Respondent, *v.* Frank K. Hays and Another, Appellants.

*Death alleged to have been caused by negligence — unexplained starting up of an elevator — hypothetical theories not sufficient to support a charge of negligence.*

On the trial of an action brought to recover the damages resulting from the death of plaintiff's intestate through the alleged negligence of the defendants, who were the owners of a building, evidence was given by the plaintiff that the deceased, who was an employee of a safe company, was killed by the starting up of an elevator, after it had stopped at an upper story of the defendants' building, and while a safe which had been carried up by it for a tenant was being removed by the deceased and others; it was not claimed that the elevator or its appliances were defective, but the plaintiff contended that the accident resulted from the negligent management of the elevator by the defendants' servants; no direct proof of the cause of the elevator's starting up was given, but experts introduced by the plaintiff offered as theories to explain it, that the engineer had pressure on at the time or that there was air in the cylinder, but these theories were not supported by facts ; it was also shown that there was no conductor in the elevator at the time of the accident, but it appeared that this was in accordance with the advice of experts, in order that the engineer might better manage the movements of the elevator.

*Held,* that the plaintiff failed to show affirmatively that the accident was caused by the defendants' negligence, and, therefore, that the complaint should have been dismissed.

Appeal by the defendants, Frank K. Hays and William H. Hays, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 22d day of November, 1892, upon a verdict rendered at the New York Circuit, and from an order entered on the 17th day of December, 1892, denying the defendants' motion for a new trial made upon the minutes.

*Thomas S. Moore,* for the appellants.

*W. G. Smith* and *Nelson Smith,* for the respondent.

O'Brien, J.:

The plaintiff sues as administratrix to recover damages for the death of her intestate, caused, as alleged, by the negligence of the defendants. The intestate was in the employ of the Marvin Com-

pany as a safe-mover and was killed while transferring a safe to an office on the seventh floor of defendants' building. In this building were two passenger elevators, one of which was constructed for the purpose of carrying freight as well as passengers.

The complaint alleged that the defendants, "by and through their wrongful, negligent and careless acts and omissions in the management of the said elevator, while the safe was being taken up and off the said elevator, caused the death of the said Patrick Murphy, without fault on the part of the said deceased." The defendants' building had been recently constructed, and no claim is advanced but that the machinery and elevators were of the newest and most approved pattern and in all respects suitable for the uses for which they were designed, including the hoisting of safes from the ground floor to any of the other floors occupied by tenants.

The evidence shows that on the day of the accident plaintiff's intestate, with several others who were in the employ of the Marvin Safe Company, had placed the safe on the elevator, which was then set in motion and rose until it reached the seventh story of the building, at which place it was intended to remove the safe and place it in one of the offices on that floor. When the elevator stopped, two iron shoes were put under and the car lowered so as to rest thereon. These iron shoes, which had been made according to the recommendation and under the direction of an experienced man, were for the purpose of bracing the elevator when it had arrived at the proper floor and so relieve the strain on the cables while the safe was being removed. They consisted of two broad pieces of iron which extended beneath the floor of the car and then, making a double angle, projected out over the floor of the hallway. After the elevator was thus lowered upon the shoes, according to the testimony of certain of plaintiff's witnesses, the car began to sag, and the janitor shouted down the elevator shaft to the engineer in the basement to put on some pressure. Whether the pressure was put on or not, it is uncontradicted that the car was brought to a standstill, the flooring was evened up and four or five men got hold of the safe, some at the sides and some in front, and pulling at it to run it out into the hall. While so engaged and after the safe got partly out of the car, plaintiff's witnesses testify that the elevator rose suddenly but gradually about three feet, tipping the safe over

and throwing Murphy, the intestate, who was standing in the hall in front of the safe, through the grating and down the opposite elevator shaft, killing him instantly.

Although a different view as to the cause of the tipping over of the safe was advanced by the defendants, we shall in our discussion assume the claim as to the rising of the elevator having caused the safe to be overthrown, to be the correct theory.

The fact that the accident occurred under the circumstances narrated would not, under the well-settled rules, entitle the plaintiff to recover. The burden was upon her to establish the liability of the defendants, and to do this she was bound to show that the death was caused solely by the defendants' negligence. The plaintiff, recognizing this to be the rule of law, undertook to support this burden by endeavoring to show that what produced the movement of the elevator and the throwing over of the safe was the result of such negligence. She did not claim, as shown, that any reliance was placed upon defective machinery or appliances, but rested upon the contention that the accident resulted from the negligent management of the elevator while the safe was being taken off. Expert testimony was introduced directed towards establishing that the jumping up of the elevator was caused in one of two ways : *First,* because the engineer had pressure on, or, *second,* because there was air in the cylinder ; and that to whichever of these causes it was due, it was equally the negligence of the defendants. One of the experts, in answer to the question, " What would cause it (the elevator) to ascend if it has stopped and is stationary ? " said : " That would be caused, in the experience I have had, in two or three ways. One cause would be that it would have to be operated by somebody operating the hand-rope. Another cause would be that when the car was brought to a rest with a heavy load on it, this valve below here, the operating valve, wasn't closed, or there may have been air in the cylinder. Some additional force or pressure would have to be applied. If pressure was suddenly put on, the car would ascend."

How sound are these theories, supported as they are by the opinions of experts, must be determined by the facts proven upon which they rest  That anyone operated the hand-rope was discarded.

The plaintiff called the engineer of the defendants, who was in

charge of the elevators at the time of the accident and who testified that the equipment of the elevators consisted of the regular pump and tank-pressure system used for passengers, in which the water is pumped into a tank and thence into the cylinders, and the pressure is regulated by the elevator conductor by means of the wire rope which passes through the car and connects with the valve, and that in addition there was provided for the freight elevator, to raise the heav·· safes, another pump, known as the " high-duty pump," which forced the water directly into the cylinder without the intervention of a tank ; that upon this day the power communicated to the elevator was not from the pressure tank at all ; that in hoisting up this safe that day " the power was communicated directly into the circulating pipe. The valve of the pressure tank has to be closed when we are using the freight pump, so we can't work both of those pumps at the same time with the same elevator. Upon this day, when this accident happened, we were using only one pump, the pump that I call the high-duty pump." He further testified that after the elevator became stationary and the shoes had been placed beneath it there was no pressure, it having been entirely shut off.

Against this positive evidence we have the testimony of witnesses who claim to have heard the janitor on the seventh floor call down to the engineer to " hold the pressure," or " keep up the pressure," which the engineer states he did not hear, and as matter of fact, did not do, followed by opinions of experts that if the pressure was on, upon the weight of the safe being partially removed, it would result in the rising of the elevator.

We do not think such evidence sufficient to justify the inference that there was pressure on, particularly when we remember that the car did not continue to rise after the safe had fallen. It would be difficult to understand, upon the theory that the rising was due to continuous pressure, how the elevator, with the safe partly upon it, could have risen three feet, upsetting the safe, and then have stopped when relieved of the weight after the safe had fallen. It would seem that the effect of such pressure, if it had existed, would have been not only to upset the safe after raising the elevator three feet, but to cause the elevator to rise until it reached the top of the building, unless sooner stopped by the engineer cutting off or removing such pressure.

Equally without evidence to sustain it is the hypothesis that there was air in the cylinder. One of plaintiff's witnesses testified that the engineeer in charge could have known if there was air in the cylinder, and although this very person was examined upon the other point, he was not questioned as to whether or not such fact existed. In the absence, therefore, of some evidence, it would be mere conjecture and guesswork to assign as the cause of the elevator's rising that there was air in the cylinder.

Apart from these theories, the plaintiff lays great stress upon the fact that there was no conductor in the elevator car, and this is assigned as an act of negligence. When, however, we consider the reason given by the engineer, of the possible danger of having a conductor on the car, though one was provided for the elevator when used by passengers, and who upon this occasion was present, but not in the car, we do not think that upon this circumstance negligence can be predicated, notwithstanding the opinions of some of the experts to the contrary. The failure on this day to make use of the conductor was not a thoughtless omission, but a deliberate act. It was the result of advice received and the judgment of the engineer himself as to the best and safest way of running the elevator, it being thought best to keep the entire control in the hands of the engineer, and permit his being directed from above by orders, which on the day in question were given by the janitor, who was on the floor with the elevator, and without the intervention or assistance of any conductor upon the elevator car itself.

That it was not negligent to act upon their best judgment, and the advice of those who had constructed the elevator, must become apparent if for a moment we stop to consider what would be the effect of their acting contrary thereto in the event of an accident occurring. It was the view and judgment of those who constructed the elevators, and who knew the character of the pumps and the extent of the power required for raising large safes, and of the engineer who had prior to this time adopted the system, that the safest and best mode was for the engineer to have complete control over the movement of the car, and that the interference of a conductor on the car would be a source of danger on account of the high pressure employed. Under such circumstances the permitting of a conductor on the car to interfere with the movements thereof,

should it result in injury to a third person, would leave the defendants in a position that they would have no ground of escape from their liability for negligence. And this liability would follow, notwithstanding they were able to show that janitors or engineers in other buildings approved of this very method of operation.

In this discussion we have confined ourselves entirely to the evidence presented on the part of the plaintiff, and which we have considered with a view to determine whether the motion made at the end of plaintiff's case to dismiss the complaint should or should not have been granted. On this record, if not controlled by the disposition which we think should be made of the case upon the motion to dismiss, we could not consider the question as to whether or not the verdict is against the weight of evidence, for the reason that there is no statement that the case contains all the evidence, and under the well-settled rules of practice the only matters presented for review would be the judgment roll and exceptions. An exception having been taken, however, to the denial of the motion to dismiss the complaint, we are at liberty to consider whether or not such exception is well taken; and in determining that, we must assume that the plaintiff has included all the testimony produced by him upon the trial which he regarded as essential to sustain the ruling made by the court in refusing to dismiss his complaint.

We have examined all of plaintiff's evidence, and unless we were to hold, contrary to the rule laid down in *Cosulich* v. *Standard Oil Co.* (122 N. Y. 118), and kindred cases, that the fact of the elevator's rising and causing the safe to tip over, raised a presumption, or was a fact, from which an inference of negligence could properly be drawn, then there was no other evidence in the case to prove that the death of plaintiff's intestate was caused by defendants' negligence. The only direct or positive evidence given as to the manner in which the pumps and machinery which raised the elevators were actually handled, was that given by the engineer of the defendants, when called as a witness for the plaintiff, and his testimony was directly opposed to any suggestion or inference of negligence. And apart from him, the only evidence having the slightest tendency to show defendants' negligence consists of the opinions of experts, who suggest possibilities and theories to account for the movement of the elevator. These suggest causes which, if proven as facts, might be

sufficient to present a question for the jury; but where, as here, plaintiff's proof of the cause of the elevator's movement begins and ends in a theory, and the cause itself is not proved, no definite theory or opinion being given as to exactly what occasioned such movement, a verdict founded upon such hypotheses and theories, in the absence of testimony to support them, cannot be sustained.

"Whatever might have been the cause of death, it was for the plaintiff to show how it occurred. The burden of proof lay upon her to establish the liability of the defendants, and to do this she was bound to show affirmatively, not only the absence of contributory negligence on the part of her intestate, but the negligence of the defendants in respect to some matter which caused the injury complained of." (Per RUGER, Ch. J., in *Dobbins* v. *Brown*, 119 N. Y. 195.) As in that case, so it may be said here: "Any inference that the accident happened in the manner suggested would, it seems to us, have been substituting conjecture for proof, and violated the rule requiring proof always to be made the basis of a recovery."

We are of opinion, therefore, that the motion to dismiss the complaint should have been granted, and this necessitates that judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellants to abide event.